UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

**CHAMBERS OF**
**CHARLES D. AUSTIN**
**UNITED STATES MAGISTRATE JUDGE**

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7810
MDD_CDAChambers@mdd.uscourts.gov

July 30, 2025

LETTER TO ALL COUNSEL OF RECORD

Re:   *Larry B. v. Frank Bisignano, Commissioner, Social Security Administration*[1]
       Civil No. 24-1696-CDA

Dear Counsel:

On June 11, 2024, Plaintiff Larry B. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for Social Security benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2023). I have considered the record in this case (ECF 9) and the parties' briefs (ECFs 12, 14, 15). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). The Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will AFFIRM the Commissioner's decision. This letter explains why.

## I.   PROCEDURAL BACKGROUND

Plaintiff filed a Title II application for Disability Insurance Benefits ("DIB") and a Title XVI application for Supplemental Security Income ("SSI") benefits on May 17, 2021, alleging a disability onset of March 8, 2021. Tr. 190-99. Plaintiff's claims were denied initially and on reconsideration. Tr. 66-87, 108-12, 120-24. On August 29, 2023, an Administrative Law Judge ("ALJ") held a hearing. Tr. 41-65. Following the hearing, on October 27, 2023, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[2] during the relevant time frame. Tr. 18-40. The Appeals Council denied Plaintiff's request for review, Tr. 1-6, so the ALJ's decision constitutes the final, reviewable decision of the SSA, *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

## II.   THE ALJ'S DECISION

The Social Security Act defines disability as the "inability to engage in any substantial

---

[1] Plaintiff filed this case against Michelle King, the Acting Commissioner of Social Security on June 11, 2024. ECF 1. Frank Bisignano became the Commissioner of Social Security on May 7, 2025. Accordingly, Commissioner Bisignano has been substituted as this case's Defendant pursuant to Federal Rule of Civil Procedure 25(d). *See* Fed. R. Civ. P. 25(d).

[2] 42 U.S.C. §§ 301 et seq.

gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

At step one, the ALJ determined that Plaintiff had "not engaged in substantial gainful activity since March 8, 2021, the alleged onset date." Tr. 23. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "Schizophrenia, anxiety disorder, major depressive disorder, substance use disorder." Tr. 23. The ALJ also determined that Plaintiff suffered from the non-severe impairments of "[m]orbid obesity and obstructive sleep apnea." Tr. 24. At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 24. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except the claimant can perform simple, routine tasks, requiring no more than occasional changes in the work setting, with no production rate for pace of work (e.g., assembly-line work). The claimant can tolerate occasional interaction with the general public, co-workers, and supervisors.

Tr. 25-26. The ALJ determined that Plaintiff was unable to perform past relevant work as a Groundskeeper (DOT[3] #406.684-014) but could perform other jobs that existed in significant numbers in the national economy. Tr. 34-35. Therefore, the ALJ concluded that Plaintiff was not disabled. Tr. 36.

### III.   LEGAL STANDARD

The scope of the Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The

---

[3] The "DOT" is the Dictionary of Occupational Titles. "The *Dictionary of Occupational Titles*, and its companion, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* . . . , are [SSA] resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations. U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993)." *Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th Cir. 2015).

findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla . . . and somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

IV.   **ANALYSIS**

Plaintiff raises one argument on appeal: that the ALJ's RFC assessment is unsupported by substantial evidence because the ALJ "materially erred by failing to provide any narrative explanation as to why he included th[e] particular limitation" that Plaintiff cannot perform "production rate for pace of work (e.g., assembly-line work)." ECF 12, at 7-12; ECF 15, at 2. Defendant counters that "the ALJ thoroughly reviewed Plaintiff's subjective allegations, considered and discussed the relevant evidence of record, and properly evaluated the prior administrative findings, tracing a path from this evidence to his overall conclusion that Plaintiff could perform work at the medium exertion level with various mental limitations," such as the production rate pace limitation. ECF 14, at 6-14.

A claimant's RFC represents "the most [the claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 416.945(a). In assessing RFC, an ALJ must "consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work.'" *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (quoting *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)). "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7 (July 2, 1996).

Here, the ALJ determined that Plaintiff had a moderate CPP limitation. Tr. 24-25. The ALJ then accommodated for Plaintiff's mental impairments by limiting him to "simple, routine tasks, requiring no more than occasional changes in the work setting, with no production rate for pace of work (e.g., assembly-line work). [Plaintiff] can tolerate occasional interaction with the general public, co-workers, and supervisors." Tr. 26.

The ALJ considered Plaintiff's reports of "schizophrenia and psychotic disorder, no productivity, paranoia, insomnia that causes hallucinations, anxiety fear of going around people, and feeling depressed with negative thoughts that cause absenteeism." Tr. 26. Plaintiff also reported that he "needed consistent reminders"; "could not understand or comprehend questions for finances"; "could not concentrate, and he felt frustrated with no energy to manage money"; and "did not finish what he started." Tr. 26. The ALJ considered reports from Plaintiff's grandmother that Plaintiff "needed reminders for personal needs and medications"; "could not

concentrate or exercise judgment"; "did not finish what he started"; "could not follow spoken instructions"; and "had to read written instructions many times, and he may forget them the next day." Tr. 27.  Plaintiff was prescribed risperidone and Depakote.  Tr. 26-27.

Despite Plaintiff's hearing testimony and non-medical source reports, the ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 27.  The ALJ noted that, despite Plaintiff's statements and his grandmother's statements that Plaintiff lacked concentration, "in March 2021, [Plaintiff] desired a career in trucking, and he was studying for his CDL while also working on a business designing hoodies and business cards." Tr. 27-28.  During an inpatient stay at Shady Grove Adventist Behavioral Health in December 2019, Plaintiff's "insight and judgment were fair.  Recent and remote memory were intact.  Attention and concentration were good." Tr. 28.  Moreover, at a follow-up at Kaiser Permanente, Plaintiff "was calm, pleasant, cooperative, coherent, related, and engaged, with subdued mood, and appropriate affect[,]" he was not "distracted[,]" and his "[i]nsight, judgment, and impulse control were fair." Tr. 29.

The ALJ observed that in April 2021, Plaintiff "was not guarded/overtly paranoid/distracted/internally preoccupied/responding to internal stimuli.  Insight/judgment/impulse control were fair." Tr. 29-30.  In May 2021, Plaintiff "was oriented to person, place, date, situation with normal concentration, intact recent memory, average impulse control, average insight, and good socially appropriate judgment." Tr. 30.  In June 2021, Plaintiff "presented as pleasant and cooperative, with normal speech, normal behavior, congruent mood and affect, and normal attention and concentration." Tr. 30.  In August 2022, "psychiatry listed current medications as Depakote, fluticasone, and risperidone.  Review of systems was positive for anxiety, behavioral disorder, depression, sleep disturbance, and suicidal ideation[,]" and Plaintiff reported medication compliance and "'fair' satisfaction with his medication regimen." Tr. 31.  In June 2023, Plaintiff's "[r]eview of systems were negative for any physical or mental health concern.  [Plaintiff] was alert, well appearing, and oriented to person, place, and time." Tr. 32.

In assessing Plaintiff's mental RFC, the ALJ considered the opinion of Dr. Mauricio, who observed Plaintiff's depressive symptoms to include "difficulty concentrating or thinking," and his anxiety associated with "difficulty concentrating[.]" Tr. 32.  Dr. Mauricio opined that Plaintiff's limitations included, among other things:

> deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere), repeated episodes of deterioration or decompensation in work or work-life settings which cause [Plaintiff] to withdraw from that situation or to experience exacerbation or signs and symptoms (which may include deterioration of adaptive behaviors), and recurrent instances of inability to attend work as a result of limitations imposed by depression, anxiety, or other mental health manifestations.

Tr. 32-33. The ALJ found Dr. Mauricio's opinion "not persuasive." Tr. 33. The ALJ reasoned that Dr. Mauricio's opinion was "not supported by the source's own records" and "not consistent with other evidence." Tr. 33.

Additionally, the ALJ considered the opinion of Dr. Bangura, who noted that Plaintiff's concentration was "fair." Tr. 33. Dr. Bangura opined that Plaintiff "would be able to take care of his own benefits." Tr. 33. The ALJ found Dr. Bangura's opinion "persuasive," noting the opinion to be "supported by the source's own examination" and "consistent with evidence from [Plaintiff's] sources." Tr. 33. The ALJ also evaluated the opinion of Dr. E. Roskes, a state agency consultant, who opined that Plaintiff "had no significant limitations in concentration, persistence, and pace." Tr. 33-34. Dr. Roskes found Plaintiff's "allegations as to sustained concentration and persistence related symptoms, social interaction related symptoms, and the ability to adapt related symptoms . . . to be partially consistent." Tr. 34. The ALJ concluded that Dr. Roskes' "opinion as to [Plaintiff's] residual functional capacity is persuasive[,]" as it "is supported by the evidence that was reviewed" and "consistent with other evidence." Tr. 34.

After examining the objective evidence and medical opinions, the ALJ concluded that Plaintiff's "psychiatric symptoms improve with cannabis cessation and psychiatric medications." Tr. 34. The ALJ observed that Plaintiff had "many normal mental status examination findings and a Mini mental status examination score of 28/30[,]" and his "activities of daily living are more extensive than alleged." Tr. 34. The ALJ found that "[c]onsidering the record as a whole, including but not limited to the activities of daily living that [Plaintiff] can independently perform and maintain at home and in his community, [Plaintiff] can perform simple, routine tasks, requiring no more than occasional changes in the work setting, with no production rate for pace of work (e.g., assembly-line work)." Tr. 34. The ALJ also concluded that Plaintiff "can tolerate occasional interaction with the general public, co-workers, and supervisors." Tr. 34.

Although the ALJ appropriately looked to the objective medical evidence of record in reaching the RFC determination, it is unclear how the cited evidence supports the production rate provision at issue. The "logical explanation" for an RFC finding is "just as important as" citing the evidence that reinforces that finding. *Thomas*, 916 F.3d at 311. When an ALJ identifies evidence to support a conclusion but fails to "build an accurate and logical bridge" from the evidence to the conclusion, the ALJ's finding cannot be meaningfully reviewed. *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018). Here, the ALJ failed to explain how the evidence supports the conclusion that Plaintiff could perform simple, routine tasks but could not work at a production rate pace. The Court therefore agrees with Plaintiff that the ALJ erred in assessing this portion of Plaintiff's RFC.

But this conclusion does not end the Court's inquiry. In reviewing SSA decisions, the Court applies a harmless-error standard. *See Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 658 (4th Cir. 2017). An error is harmless "when it is inconceivable that a different administrative conclusion would have been reached absent the error." *Kersey v. Astrue*, 614 F. Supp. 2d 679, 696 (W.D. Va. 2009).

*Larry B. v. Bisignano*
Civil No. 24-1696-CDA
July 30, 2025
Page 6

Governed by that standard, and having carefully reviewed the entire record, the Court finds that the ALJ's error was inconsequential. After concluding that Plaintiff had a moderate CPP limitation[4], the ALJ limited Plaintiff to "simple, routine tasks, requiring no more than occasional changes in the work setting, with no production rate for pace of work (e.g., assembly-line work)." Tr. 26. However, the ALJ did not explicitly base these mental RFC provisions on any opinions contained in the record. *Cf. Sizemore v. Berryhill*, 878 F.3d 72, 80-81 (4th Cir. 2017) (affirming an ALJ's decision where: (1) the ALJ adopted certain RFC limitations suggested in a medical opinion that provided "detailed findings" on a claimant's "sustained concentration and persistence limitations" and (2) the ALJ assigned the opinion "significant weight"). In any event, this Court has previously held that a restriction from performing at a production rate pace adequately accounts for a claimant's moderate CPP limitation. *See, e.g.*, *Teresa B. v. Comm'r, Soc. Sec. Admin.*, No. SAG-18-2280, 2019 WL 2503502, at *2 (D. Md. June 17, 2019) (holding that an RFC provision limiting a claimant to "no work requiring a high-quota production-rate pace (i.e., rapid assembly line work where co-workers are side-by-side and the work of one affects the work of the other)" was sufficient to address a moderate CPP limitation); *Kenneth L. v. Kijakazi*, No. SAG-20-624, 2021 WL 4198408, at *2 (D. Md. Sept. 15, 2021) (holding that a limitation to "no strict production quotas" was sufficient to address moderate CPP limitations); *Lori S. v. Kijakazi*, No. BAH-21-2034, 2022 WL 1721192, at *3 (D. Md. May 27, 2022) (holding that the ALJ accounts for the claimant's moderate CPP limitations when limiting the claimant to "no production rate or pace work[,] [t]hat is no assembly line or high production quota[.]"). Additionally, our sister court has held that where an ALJ "finds moderate limitation in CPP" and "has included a . . . restriction to 'non-production oriented' work, *Mascio* does not require further explanation by the ALJ, at least absent some evidentiary showing by the claimant . . . that he or she cannot perform even non-production-type work because of his or her particular CPP deficits." *Grant v. Colvin*, No. 15-0515, 2016 WL 4007606, at *9 (M.D.N.C. July 26, 2016), *recommendation adopted*, slip op. (M.D.N.C. Sept. 21, 2016).

For the reasons discussed above, it is unclear how the ALJ determined that a production rate pace limitation was necessary. Nevertheless, the Court does not conclude that the lack of explanation for this pace limitation amounts to reversible error. To the extent that a pace limitation was necessary at all, the ALJ adopted an RFC provision that was more restrictive than anything suggested within the record. Additionally, Plaintiff fails to identify any RFC provisions that the ALJ should have included in lieu of the provision at issue in this case. Plaintiff also fails to explain how a more detailed explanation of either pace or the mental RFC might change the outcome of this case. *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency determination."); *Smith v. Colvin*, No. TMD-15-1694, 2016 WL 5147195, at *10 (D. Md. Sept. 20, 2016) (citing *Jones v.*

---

[4] When a claimant has a mental impairment, an ALJ must make "a specific finding as to the degree of limitation" in CPP. *Patterson*, 846 F.3d at 659. CPP involves "the abilities to focus attention on activities and stay on task age-appropriately." 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(E)(3). When an ALJ determines that a claimant has a moderate CPP limitation, the ALJ must either include a corresponding provision in their RFC assessment or explain why no such provision is warranted. *See Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015).

*Astrue*, 691 F.3d 730, 734–35 (5th Cir. 2012)) (finding harmless error where the claimant failed to demonstrate how the result would have changed had the ALJ properly addressed the claimant's cognitive difficulties in the RFC analysis). For these reasons, the Court is unable to conclude that remand for additional analysis might result in a more restrictive RFC assessment or a finding of disability. Thus, the ALJ's error was harmless. *Kersey*, 614 F. Supp. 2d at 696. The Court will therefore affirm the ALJ's decision.

## V. CONCLUSION

For the reasons set forth herein, pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is AFFIRMED. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/

Charles D. Austin
United States Magistrate Judge